UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------- X
Christopher Roguz,

                                 Plaintiff,     **MEMORANDUM RULING**

         -against-

                                          Case No. 09-1052 (TLM)
Jeffrey Walsh and City of New Britain,

                             Defendants,
------------------------------------------------------------- X

      Before the Court are defendants' City of New Britain and Police Officer Jeffrey Walsh Motions for Summary Judgment [Rec. Docs. 76 and 77], plaintiff Christopher Roguz's Memoranda in Opposition thereto [Rec. Docs. 81 and 82], defendant Walsh's Reply Memorandum in further support of the Motion [Rec. Doc. 84], and plaintiff's sur-Reply Memorandum in further support of the Opposition [Rec. Doc. 85]. For the reasons that follow, defendant Walsh's Motion will be GRANTED IN PART and DENIED IN PART, and defendant City of New Britain's Motion will be GRANTED IN PART and DENIED IN PART.

      Plaintiff's Complaint [Rec. Doc. 1] alleges that plaintiff was subjected to excessive force by City of New Britain Police Officer Jeffrey Walsh. Plaintiff also asserts claims of assault and battery, negligent infliction of emotional distress, unlawful entry, and false arrest against Walsh. Plaintiff improperly brings indemnification claims under Connecticut General Statute section 7-465 against Walsh individually.

      Plaintiff brings claims against the City of New Britain under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to train, failure to supervise, and failure to investigate; for indemnification for the *Monell* claim; and for indemnification for the actions of its employee Walsh. Plaintiff's indemnification claims against the City properly ask that the City

pay on behalf of defendant Walsh for any liability imposed for civil rights violations or damages and improperly ask that the City pay on behalf of the City for liability imposed under *Monell*.

I.      Background

On June 4, 2007, sometime after 1:00 A.M., plaintiff Christopher Roguz and his brother Mark Roguz had a loud argument, during which plaintiff knocked over a nightstand. Def. Walsh's Rule 56(a)1 Stmt. ¶ 5 [Rec. Doc. 77]; Pl.'s Rule 56(a)2 Stmt. ¶ 2 [Rec. Doc. 81];[1] Christopher Roguz Dep., Def. Ex. A at 81:7; 82:12–15 [Rec. Doc. 77]. Plaintiff was intoxicated at the time. Pl. Ex. 8 at 24 [Rec. Doc. 81]. A neighbor of Roguz called 911 and reported the argument. Szul Dep., Pl. Ex. 5 at 28:4–16 [Rec. Doc. 81]; Walsh Dep., Def. Ex. Q at 49:8–11 [Rec. Doc. 77]. As a result, police officer Anthony Hoskie and defendant Walsh were sent to the scene.  Hoskie Dep., Def. Ex. N at 17:21–18:12 [Rec. Doc. 77]; Keller Dep., Pl. Ex. 10 at 14:23–15:2 [Rec. Doc. 81].

The events that followed are largely in dispute. Plaintiff asserts that the argument ended several minutes before the officers arrived at his house. Pl.'s Rule 56(a)2 Stmt. ¶ 4 [Rec. Doc. 81]; Christopher Roguz Dep., Pl. Ex. 1 at 85:24–86:8 [Rec. Doc. 81]. Defendants allege that when Walsh arrived he could hear people arguing inside the house. Def. Walsh's Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc. 77]; Def. City of New Britain's Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc. 76]. Officers Walsh and Hoskie entered plaintiff's home without consent or a warrant.  Pl.'s Rule 56(a)2 Stmt. ¶ 5 [Rec. Doc. 77]; Def. Walsh's Rule 56(a)1 Stmt. ¶¶ 11–12 [Rec. Doc. 81].

Upon entering, Officers Walsh and Hoskie almost immediately handcuffed plaintiff, placing his hands behind his back. Def. Walsh's Rule 56(a)1 Stmt. ¶ 17 [Rec. Doc. 77]; Walsh

---

[1] Plaintiff's Rule 56(a)(2) Statement [Rec. Doc. 81] contains Responses to Jeffrey Walsh's Rule 56(a)1 Statement, numbered paragraphs 1-62, and Disputed Issues of Material Fact, numbered paragraphs 1-80. Unless otherwise noted, the citations to Plaintiff's Rule 56(a)(2) Statement refer to the numbered paragraphs in the Disputed Issues of Material Fact.

Dep., Def. Ex. Q at 53:11–17 [Rec. Doc. 77].Walsh alleges that plaintiff was angry and threatening. Def. Walsh's Rule 56(a)1 Stmt. ¶¶ 15–16 [Rec. Doc. 77]. Walsh admits that plaintiff did not physically resist being handcuffed. Walsh Dep., Def. Ex. Q at 74:24–75:1 [Rec. Doc. 77]. Officer Hoskie spoke with plaintiff while Walsh spoke with plaintiff's brother, then Walsh returned to plaintiff and told him that he was going to be arrested for disorderly conduct. Def. Walsh's Rule 56(a)1 Stmt. ¶¶ 18–19 [Rec. Doc. 77]. The officers led plaintiff down the stairs in handcuffs. *Id.* at ¶¶ 24, 28.  Plaintiff admits that he was upset about being arrested, asked why he was being arrested, swore at the officers, and called them "pigs." Christopher Roguz Dep., Def. Ex. A at 99:12–16, 101:5–8, 110:21–111:9 [Rec. Doc. 77]. During the events that followed, plaintiff suffered several injuries, including a fractured nose, a laceration on the back of his head, and other injuries to his legs and face. Pl.'s Rule 56(a)2 Stmt. ¶ 52 [Rec. Doc. 81]. Plaintiff was handcuffed when he received these injuries. *Id.* at ¶ 51; Walsh Dep., Pl. Ex. 7 at 197:1–5 [Rec. Doc. 81]. The parties dispute how plaintiff was injured.

Defendants maintain that plaintiff was angry and threatened the police officers and the officers' families. Def. Walsh's Rule 56(a)1 Stmt. ¶¶ 15, 20 [Rec. Doc. 77]; Def. City of New Britain's Rule 56(a)1 Stmt. ¶¶ 15, 20 [Rec. Doc. 76]. While Walsh led plaintiff down the stairs, defendants allege that plaintiff resisted, lost his balance, and fell face first into a wall. Def. Walsh's Rule 56(a)1 Stmt. ¶ 28 [Rec. Doc. 77]; Def. City of New Britain's Rule 56(a)1 Stmt. ¶ 28 [Rec. Doc. 76]; Walsh Dep., Def. Ex. Q at 90:3–100:11 [Rec. Doc. 77]. Plaintiff, on the other hand, asserts that defendant Walsh, without provocation, slammed his head into a wall three times. Pl.'s Rule 56(a)2 Stmt. ¶ 17 [Rec. Doc. 81]. The officers then led plaintiff outside of the house. Def. Walsh's Rule 56(a)1 Stmt. ¶ 32 [Rec. Doc. 77].

What happened next is also disputed. Defendants claim that plaintiff spat in Walsh's face. Def. Walsh's Rule 56(a)1 Stmt. ¶ 33 [Rec. Doc. 77]; Def. City of New Britain's Rule 56(a)1 Stmt. ¶ 33 [Rec. Doc. 76]. In response, Officer Hoskie attempted to bring plaintiff to the ground. Def. Walsh's Rule 56(a)1 Stmt. ¶ 37 [Rec. Doc. 77]. Plaintiff resisted, struggled, and attempted to knock Hoskie down. *Id.* at ¶ 38, 40; Walsh Dep., Def. Ex. Q at 113:20–114:1 [Rec. Doc. 77]. Hoskie was unable to get plaintiff to the ground, and Walsh attempted to assist Hoskie. Walsh Dep., Def. Ex. Q at 114:8–17 [Rec. Doc. 77]. Walsh struggled with plaintiff, using "hands-on" tactics in an attempt to subdue him. *Id.* at 114:16–118:12. When those tactics were unsuccessful, Walsh took out his extendable baton and struck plaintiff with it, attempting to hit plaintiff on the shoulder. Def. Walsh's Rule 56(a)1 Stmt. ¶ 41–42, 49 [Rec. Doc. 77]; Walsh Dep., Def. Ex. Q at 137:13–25 [Rec. Doc. 77]. Plaintiff then dropped to his knees and made a movement to spit again at the officers. Def. Walsh's Rule 56(a)1 Stmt. ¶ 43 [Rec. Doc. 77]; Walsh Dep., Def. Ex. Q at 147:6–149:1 [Rec. Doc. 77]. Walsh then punched plaintiff in the face to prevent him from spitting. Def. Walsh's Rule 56(a)1 Stmt. ¶ 44 [Rec. Doc. 77]; Walsh Dep., Def. Ex. Q at 151:5–152:24 [Rec. Doc. 77]. Walsh asserts he does not know how plaintiff received the laceration on the back of his head. Def. Walsh's Rule 56(a)1 Stmt. ¶ 50 [Rec. Doc. 77].

Plaintiff maintains that he spat blood downwards in order to clear his mouth so that he could breathe, as his mouth had filled with blood after his face was slammed into the wall, Pl.'s Rule 56(a)2 Stmt. ¶¶ 22, 24 [Rec. Doc. 81]; he further maintains that once he spat, Walsh punched him in the face, *id.* at ¶ 26; that he was then punched, kicked, and hit by a baton several times on his body and legs, *id.* at ¶¶ 27, 38; and that as a result of those blows, he fell to the ground, *id.* at ¶ 37. He claims that he did not resist the actions of the officers in any way or

attempt to escape, *id.* at ¶ 28–35, and that once he fell to the ground, Walsh hit him on the back of the head with the baton, and that he then lost consciousness, *id.* at ¶ 43.

After plaintiff was injured, the officers called medics to transport him to a hospital. *Id.* at ¶ 50. After he was treated, the officers brought plaintiff to the police station. *Id.* at ¶ 57.  As a result of plaintiff's injuries and the officers' explanation of what occurred that night, an investigation was initiated by the City of New Britain Police Department that later concluded, among other things, that the strike to the back of plaintiff's head with the baton was not justified and violated the City's reasonable use policy. *Id.* at ¶ 67, 79–80. The criminal charges against plaintiff were subsequently dismissed. Def. Walsh's Rule 56(a)1 Stmt. ¶ 57 [Rec. Doc. 77].

## II. Summary Judgment Standard

Summary judgment is appropriate only when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Such a determination is to be made after "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact.  When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim, and if the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial.  *Id.* at 322–23.

Once the burden shifts to the non-moving party, it must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* at 324. The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

III. DISCUSSION

A. Excessive Force

Walsh asserts he is entitled to summary judgment on plaintiff's section 1983 excessive force claim as the use of force was reasonable as a matter of law. Walsh further asserts that he is entitled to qualified immunity based on the circumstances surrounding the arrest.

1. Reasonableness of the Use of Force

Plaintiff's excessive force claim is governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

6

governmental interests at stake." *Id.* at 396 (quotations and citations omitted). The assessment involves consideration of the facts and circumstances confronting the officer, including the severity of the crime at issue, whether the suspect posed an immediate threat to the officers or others, and whether the suspect was resisting arrest or attempting to flee to evade arrest. *Graham*, 490 U.S. at 396. Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while considering that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

The parties give conflicting versions of what happened on the night of the incident regarding the conduct of Walsh and the conduct of—and the amount of resistance offered by— plaintiff. Plaintiff testified at his deposition that he did not resist arrest, that he spat only to remove blood from his mouth, and that while handcuffed, his head was slammed against a wall. Christopher Roguz Dep., Pl. Ex. 1 at 115:2–7, 105:19–20, 112:12–23, 122:20–123:1 [Rec. Doc. 81]. Additionally, he alleges that Walsh punched him and hit him with his baton, including once on the back of the head, all while he was handcuffed. Compl. ¶ 11; Christopher Roguz Dep., Pl. Ex. 1 at 114:12–17, 115:14–24, 120:15–121:10. Walsh asserts that plaintiff resisted arrest and spat at him, Def. Walsh's Rule 56(a)1 Stmt. ¶ 33, 38, and the fact that plaintiff was intoxicated justified his use of force against plaintiff. Def. Walsh Mem. Support Mot. Summ. J. 8–10. However, a factual dispute remains regarding how plaintiff's intoxication affected his behavior.

Plaintiff concedes that he had been drinking, but alleges that he was not impaired, and that he fully complied with the officers' instructions to him, Christopher Roguz Dep., Pl. Ex. 1 at 94:2–5, 101:15–20, 100:23–4, 115:2–7, while Walsh asserts that plaintiff was intoxicated and belligerent, Walsh Dep., Def. Ex. Q at 65:5–19.  A case in such a posture as this is not amenable to summary judgment, and the factual disputes must be resolved by a jury and not the Court. Defendant Walsh's motion for summary judgment on plaintiff's excessive force claim as to the reasonableness of the force used must be denied.

2.   Qualified Immunity for the Excessive Force Claim

Walsh also asserts that he is shielded from liability for excessive force based on qualified immunity. Police officers are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The right not to be subjected to excessive force is clearly established. *Lennon v. Miller*, 66 F.3d 416, 422 (2d Cir. 1995). "[T]he question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Id.* at 425 (quotation marks and citations omitted).

As set out hereinabove, there are genuine issues of disputed material fact that must be resolved by a jury in order for the Court to make the legal determination based on the jury's findings of fact regarding whether qualified immunity applies, and thus they preclude the Court from granting summary judgment on plaintiff's excessive force claim based on qualified immunity. Defendant Walsh's motion for summary judgment on the issue must therefore be denied.

B.  Unlawful Entry

Plaintiff alleges that Walsh unlawfully entered his home without a warrant or justification. Walsh responds that plaintiff failed to plead a claim for illegal entry.  However, plaintiff gave the required "fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007), regarding his unlawful entry claim in his complaint, which alleged that defendant Walsh "entered the residence without receiving permission from any of the individuals living at the residence" and violated his right "to be free [from] an unreasonable seizure of his person."  Compl. ¶¶ 7, 18. While this claim was contained within the same count as the excessive force claim, claims founded on the same transaction or occurrence may be stated in the same count, although it is not preferred. Fed. R. Civ. P. 10.  Accordingly, plaintiff properly pleaded his unlawful entry claim.

Government intrusion into a home, including to make an arrest, without a warrant is presumptively unconstitutional. *Payton v. New York*, 445 U.S. 573 (1980). However, police may enter a home without a warrant when exigent circumstances exist. *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (*en banc*). Exigent circumstances are established when police officers are "confronted by an 'urgent need' to render aid," *id.* (citations omitted), "to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). Domestic disputes have a particularly "combustible nature" which provides "great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." *Tierney*, 133 F.3d at 197. However, in establishing exigent circumstances, police may not rely solely on an "anonymous and uncorroborated 911 call to justify a warrantless entry into a private dwelling." *Kerman v. City of New York*, 261 F.3d 229,

238 (2d Cir. 2001). On the other hand, an anonymous 911 call can create exigent circumstances where the caller "described an immediate and deadly threat of harm to which she herself was being exposed at that location[,] . . . and where the address from which the call was placed was verified." *Anthony v. City of N.Y.*, 339 F.3d 129, 136–37 (2d Cir. 2003).

It is undisputed that Walsh entered plaintiff's home without a warrant or consent. Pl.'s Rule 56(a)2 Stmt. ¶ 5 [Rec. Doc. 77]; Def. Walsh's Rule 56(a)1 Stmt. ¶¶ 11–12 [Rec. Doc. 81]. However, Walsh argues that exigent circumstances existed to justify his warrantless entry into plaintiff's home. While hearing a loud domestic dispute coming from inside a home could create exigent circumstances, the parties disagree here whether the home was silent at the time of the officers' arrival.  According to plaintiff, the police officers arrived after the plaintiff's argument with his brother ended, and thus they could not have heard any noise coming from the house. Pl.'s Rule 56(a)2 Stmt. ¶ 4 [Rec. Doc. 81]; Christopher Roguz Dep., Pl. Ex. 1 at 85:24–86:8 [Rec. Doc. 81]. Walsh claims that when the police officers arrived, they heard arguing coming from plaintiff's home. Def. Walsh's Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc. 77]; Def. City of New Britain's Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc. 76].  Furthermore, while it is undisputed that Walsh and Hoskie were notified of the 911 telephone call regarding a disturbance at the Roguz home, Szul Dep., Pl. Ex. 5 at 28:4–16 [Rec. Doc. 81]; Walsh Dep., Def. Ex. Q at 49:8–11 [Rec. Doc. 77], the record before the Court does not contain sufficient evidence to establish whether or not the telephone call upon which the City of New Britain Police Department acted in sending Walsh and Hoskie to the Roguz home was anonymous or uncorroborated, and therefore whether the telephone call itself demonstrates sufficient indicia of reliability to create exigent circumstances. Based on the undisputed facts and the entirety of the record before the Court, Walsh has not established exigent circumstances justifying warrantless entry into plaintiff's home. As genuine

disputes as to material fact remain, Walsh's motion for summary judgment as to whether Walsh unlawfully entered plaintiff's home must be denied.

Having found that a question of fact exists as to whether plaintiff's constitutional rights were violated when Walsh and Hoskie entered the Roguz home, the Court must still consider whether Walsh is entitled to qualified immunity. It was "firmly established" as of June 4, 2007 that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *See Loria v. Gorman*, 306 F.3d 1271, 1283 (2d Cir. 2002).

The second prong of the qualified immunity analysis asks whether "it was objectively reasonable for [the official] at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott,* 599 F.3d 129, 134 (2d Cir. 2010). A defendant "is entitled to qualified immunity . . . if reasonable officers could disagree as to whether exigent circumstances were present." *Loria*, 306 F.3d at 1287. The same factual disputes regarding the details of the 911 call and the noise coming from the house upon Walsh and Hoskie's arrival at the scene prevent the Court from being able to conclude, as a matter of law, that it was objectively reasonable for Walsh to believe that his actions were lawful at the time he took them. Walsh's motion for summary judgment for qualified immunity for unlawful entry must therefore also be denied.

## C.  False Arrest

Plaintiff alleges that his arrest was unlawful because it was not supported by probable cause and because Walsh entered his home to arrest him without a warrant or a justification. In analyzing claims for false arrest brought under section 1983 to vindicate plaintiff's right to be free from unreasonable seizure, federal courts look to relevant state law. *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir. 2004) (examining Connecticut law to assess a plaintiff's false arrest

claim); *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Under Connecticut state law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe,* 186 Conn. 265, 267 (1982).[2]

An arrest made without probable cause can establish a false arrest claim. *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . ." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Weyant,* 101 F.3d at 852).[3]

Walsh argues that he had probable cause to arrest plaintiff for disorderly conduct. The statute criminalizing disorderly conduct states in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: Engages in fighting or in violent, tumultuous or threatening behavior; or by offensive or disorderly conduct, annoys or interferes with another person; or makes unreasonable noise . . . ." Conn. Gen. Stat. Ann. § 53a-182 (West 2012).

Based on the standard for probable cause set out above and the undisputed facts set out hereinafter, the Court concludes that there was probable cause to arrest the plaintiff.  "It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk,* 496

---

[2] Plaintiff brought a claim for false arrest and false imprisonment. Compl. ¶ 20. Under Connecticut state law, the law for false arrest and false imprisonment is identical. *Russo*, 479 F.3d at 204.

[3] Connecticut state law authorizes police officers to arrest an individual without a warrant "when the person is taken or apprehended in the act or on the speedy information of others." Conn. Gen. Stat. Ann. § 54-1f (West 2011).

F.3d at 157. While the jury is to resolve contests "[w]here parties dispute *what facts were known to police officers at the time an individual was arrested, . . .*" *Moreno v. City of New Haven Dep't of Police Servs.,* 604 F. Supp. 2d 364, 372 (D. Conn. 2009), Walsh's undisputed knowledge provided the requisite probable cause here. It is undisputed that there was a 911 telephone call that reported an argument and that plaintiff and his brother Mark Roguz had a loud disagreement during which plaintiff knocked over at least one piece of furniture—an argument that they reported to the police officers upon the officers' arrival.  Based on the admitted facts, a jury of reasonable persons would not have a proper basis to conclude that Walsh lacked probable cause when he arrested plaintiff for violating Connecticut General Statute section 53a-182 prohibiting disorderly conduct.

Plaintiff alternatively argues that his arrest was unlawful because of Walsh's warrantless entry into his home, regardless of the existence of probable cause. Under Connecticut law, a claim for false arrest may be established based on a warrantless home arrest. *Bauer v. City of Hartford*, No. 07-CV-1375, 2010 WL 4429697, at *8 n.5 (D. Conn. Oct. 29, 2010); *see Green v. Donroe,* 440 A.2d 973, 974 (Conn. 1983); *Berry v. Loiseau,* 614 A.2d 414, 432 (Conn. 1992); *Rolon v. Murray,* No. CV000434590S, 2002 WL 31819065, at *6 (Conn. Super. Ct. Nov. 26, 2005); *accord Burke v. Cicero Police Dept.*, No. 07-CV-624, 2011 WL 1232107 (N.D.N.Y. Mar. 30, 2011); *Durney v. City of N.Y.,* No. 91-CV-3959, 1996 WL 1057148, at *7 (E.D.N.Y. Oct. 25, 1996) (citing *Ruggiero v. Krzeminski,* 928 F.2d 558 (2d Cir. 1991)); *Dzinanka v. County of Suffolk,* 932 F. Supp. 59 (E.D.N.Y. 1996). Police officers need either a warrant, or probable cause plus exigent circumstances, to enter a home to make an arrest. *Loria v. Gorman*, 306 F.3d 1271, 1283 (2d Cir. 2002) (citing *Kirk v. Louisiana*, 536 U.S. 635 (2002) (per curiam)).  As set out above, there are genuine issues of material fact that preclude the Court from being able to

enter summary judgment on the issue of unlawful entry or qualified immunity for unlawful entry. Therefore, summary judgment must be denied as to plaintiff's false arrest claim.

### D.  State Law Claims

Plaintiff also brings Connecticut state law claims against Walsh for "intentional" assault and battery; "wanton, willful, malicious" assault and battery; "negligent assault and battery"; and negligent infliction of emotional distress. Walsh argues summary judgment must be granted on these claims, first because he is entitled to governmental immunity under Connecticut state law, and alternatively because he was justified in his use of force.

#### 1.  Governmental Immunity

Under Connecticut common law, a "municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." *Colon v. City of New Haven*, 758 A.2d 900, 902 (Conn. 2000) (internal quotations and citations omitted). The operation of a police department is a discretionary act, *see Gordon v. Bridgeport Housing Auth.,* 544 A.2d 1185, 1189–90 (Conn. 1988), and this includes the actions of a department's officers when conducting an arrest. *Castorina v. Stewart*, CV 950324487, 1998 WL 309393 (Conn. Super. Ct. June 3, 1998). However, there are three exceptions to governmental immunity for discretionary acts: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." *Evon v. Andrews*, 559 A.2d 1131, 1134 (Conn. 1989).

Plaintiff's assault and battery claim will not be barred by governmental immunity if the jury that hears this case finds that an assault and battery occurred and that it involved malice, wantonness, or intent to injure as it will fall within the governmental immunity exception for malicious, wanton, or intentional acts. Plaintiff also argues governmental immunity does not bar his claims based in negligence—assault and battery, if found to be satisfied by negligence, and negligent infliction of emotional distress—because the "imminent harm" exception applies.

While plaintiff's state law claims for negligent assault and battery and negligent infliction of emotional distress do fall into the general governmental immunity for negligence, the imminent harm exception applies. The imminent harm exception can apply in the excessive force context where the harm to an identifiable person is so imminent as to create a duty of care. *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 367 (D. Conn. 2008) (finding imminent harm exception applicable in case where police officer struck individual with baton); *Carey v. Maloney*, 480 F. Supp. 2d 548, 560 (D. Conn. 2007) (finding imminent harm exception applicable in case where police officers used pepper spray on individual); *Taylor v. City of Middletown*, 436 F. Supp. 2d 377, 388 (D. Conn. 2006); *Keeney v. City of New London*, 196 F. Supp. 2d 190, 202 (D. Conn. 2002). Here, plaintiff was a clearly identifiable individual to Walsh, and it is undisputed that Walsh purposefully hit and swung his baton at plaintiff. Plaintiff was put at risk of imminent harm from Walsh's hits and baton swings.

Based on the undisputed facts and the entirety of the record before the Court, Walsh is not entitled, at the summary judgment stage, to governmental immunity for the claims of assault and battery or negligent infliction of emotional distress as a result of the exceptions to the immunity doctrine.

2. Reasonableness of Walsh's Actions Related to Plaintiff's State Law Claims

To make out a Connecticut state law claim for negligent infliction of emotional distress, plaintiff must show "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.,* 815 A.2d 119, 126 (Conn. 2003). Walsh asserts he is entitled to summary judgment on the claim of negligent infliction of emotional distress because his actions were reasonable and lawful due to probable cause. While probable cause for an arrest plays a role in the analysis of the reasonableness of a defendant's actions and could be a complete defense to a negligent infliction of emotional distress claim based solely on false arrest, given the record before the Court, it cannot provide a complete defense in this case at the summary judgment stage. Plaintiff's negligent infliction of emotional distress claim also includes the allegations supporting his excessive force claim. "The courts have determined that use of excessive force . . . also can state a claim for negligent infliction of emotional distress." *Ochoa v. City of W. Haven*, 08-0024 DJS, 2011 WL 3267705 (D. Conn. July 29, 2011). As set out above, genuine issues of material fact exist as to the reasonableness of Walsh's actions related to his use of force against plaintiff.

Walsh also asserts he is entitled to summary judgment on the claims of assault and battery[4] and negligent infliction of emotional distress because his actions were reasonable and

---

[4] Plaintiff has alleged three separate counts for assault and battery: negligent, intentional, and willful and wanton. In Connecticut, "an actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences; it may also be one committed negligently." *Krause v. Bridgeport Hosp.*, 169 Conn. 1, 8–9, 362 A.2d 802, 806 (1975) (citing *Alteiri v. Colasso*, 168 Conn. 329, 362 A.2d 798 (1975); *Russo v. Porga*, 141 Conn. 706, 708–09, 109 A.2d 585 (1954)). Therefore, the court will address all three assault and battery claims together.

justified pursuant to Connecticut General Statute section 53a-19[5] or section 53a-22[6] which allow for the reasonable use of force under certain circumstances. The Court concluded, *supra*, that genuine issues of disputed material fact remain regarding the reasonableness of the force applied to plaintiff by Walsh. Walsh's motion for summary judgment as it relates to plaintiff's claims of assault and battery and negligent infliction of emotional distress must therefore be denied.

    3.   Plaintiff's Indemnification Claims Against Walsh, Individually

       Plaintiff improperly brings indemnification claims against Walsh individually, which in essence seek to have him indemnify himself for his alleged wanton, willful, malicious assault and battery, negligent assault and battery, false arrest, negligent infliction of emotional distress, and for plaintiff's claim against the City of New Britain under *Monell*, 436 U.S. 658. To the extent that plaintiff's complaint seeks indemnity from Walsh, summary judgment will be granted. The Connecticut indemnification statute, Connecticut General Statute Section 7-465, requires municipalities to indemnify employees for certain damages to third parties for which an employee may be liable, and not for employees to indemnify themselves to pay damages to third parties. Plaintiff's claims for indemnification against Walsh are not legally tenable and fail as a matter of law.

---

[5]"A person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose." Conn. Gen. Stat. Ann. § 53a-19 (West 2010).

[6] "Except as provided in subsection (a) of this section, a peace officer, special policeman appointed under section 29-18b, motor vehicle inspector designated under section 14-8 and certified pursuant to section 7-294d or authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized." Conn. Gen. Stat. Ann. § 53a-22 (West 2010).

E. Plaintiff's Claims Against the City of New Britain

   1.  Plaintiff's Indemnification Claims Pursuant to Connecticut General Statute Section 7-465

Connecticut General Statute section 7-465[7] *requires* municipalities[8] to indemnify employees for liability imposed for violations of civil rights and damages as long as the employee "was acting in the performance of his duties and within the scope of his employment" and the injury "was not the result of any willful or wanton act . . . ." Plaintiff brings two claims for indemnification against the City: 1) properly for his claims against Walsh, and 2) improperly against the City for his claims against the City.

      Of plaintiff's two claims, only the first claim seeking indemnity for his claims against Walsh for assault and battery, excessive force, unlawful entry, false arrest, and negligent infliction of emotional distress is tenable under Connecticut law. Plaintiff's second claim seeking indemnification from the City for his *Monell* claim against the City for the violation of a federally protected right that was caused by a municipal policy, practice, or custom is not legally tenable and fails as a matter of law. For a municipality to be required to pay indemnity under section 7-465, liability must first be found against that municipality's *employee*. *Myers v. City of Hartford*, 853 A.2d 621 (Conn. 2004). As plaintiff seeks indemnification from the City for his

---

[7] The statute provides in relevant part: "Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty." Conn. Gen. Stat. Ann. § 7-465 (West 2012).

[8] "[T]he general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity. The legislature has acted to limit governmental immunity in certain circumstances. For example, . . . the legislature has provided for indemnification by municipalities of municipal officers, agents or employees who incur liability for certain of their official conduct. See General Statutes §§ 7-465 . . . ." *Williams v. City of New Haven*, 707 A.2d 1251, 1253 (Conn. 1998).

*Monell* claim against the City itself, rather than of one of the City's municipal employees, summary judgment must be granted as to that claim as a matter of law.

Plaintiff asserts claims against the City of New Britain calling for the City to pay any amount that Walsh becomes obligated to pay because of liability imposed on Walsh for civil rights violations or damages. These claims are proper under Connecticut law as they seek to have a municipality pay on behalf of its employee for the employee's liability. The City of New Britain argues that it is entitled to summary judgment on the indemnification claims for assault and battery, excessive force, and false arrest because it argues that each underlying liability claim requires willful or wanton act or acts. Genuine issues of material fact exist as to whether defendant Walsh's actions were willful or wanton. As summary judgment will be denied as to each of these claims for which the City of New Britain might be required to indemnify Walsh if he were to be found by the jury to be liable but not to have acted willfully or wantonly and the exceptions to governmental immunity apply, summary judgment for the City of New Britain must be denied as to these claims.

The City of New Britain concedes that it could be required to indemnify plaintiff for the claims asserted against defendant Walsh but only if those claims are due to negligence and not willful or wanton acts, but asserts that in that event, Walsh is entitled to governmental immunity. It is correct that if defendant Walsh is entitled to governmental immunity for the negligence claims, the corresponding indemnification claims against the City would become moot. As the Court has previously concluded in Section III.D.1, *supra*, Walsh is not entitled at the summary judgment stage to governmental immunity for plaintiff's negligence claims due to possible application of the imminent harm exception. Therefore, as summary judgment will be denied as

to the negligence claims, summary judgment must also be denied as to the corresponding indemnity claims against the City.

   2.   Plaintiff's Federal Law Excessive Force Claim Against the City of New Britain

       A municipality cannot be held liable under section 1983 for its employees' conduct under a theory of *respondeat superior*. *Reynolds v. Giuliani*, 506 F.3d 183, 190–91 (2d Cir. 2007). However, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable under section 1983 for its policy, custom, or practice that causes the deprivation of a constitutional right.  Plaintiff premises its *Monell* claim against the City of New Britain on three separate theories.

       Plaintiff first asserts that the City of New Britain is liable for failing to train its officers. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train . . . . To satisfy [section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011) (internal quotation marks omitted; second alteration in original).  Plaintiff has produced some testimonial evidence of the training that the City of New Britain provides its officers regarding baton use. For example, officers, including Walsh, receive baton training, which includes explanation of the risk of bodily harm accompanying striking different "zones" of the body as well as practice simulations using the baton. Steck Dep., Pl. Ex. 2 at 84:3-21; Tuttle Dep., Pl. Ex. 11 at 7:8–8:9 [Rec. Doc. 82]. While Walsh did not receive a specific lesson regarding baton use on a handcuffed person, he was trained on when force should be used on a handcuffed person, which included discussion of baton use. Walsh Dep., Def. Ex. Q at 41:3–46:8. Plaintiff fails to allege any inadequacies with that training or any theory as to how a

training deficiency caused Walsh to use excessive force against him. In fact, plaintiff produced testimonial evidence that defendant Walsh's baton use violated the training on use of force. Tuttle Dep., Pl. Ex. 11 at 7:8–10:7 [Rec. Doc. 82]. Plaintiff has not, as is required to proceed beyond summary judgment, "identif[ied] a specific deficiency in the city's training program and establish[ed] that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Okin v. Vill. of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 440 (2d Cir. 2009) (alterations in original).  As such, plaintiff's *Monell* claim based on a failure to train cannot survive summary judgment.

Plaintiff also asserts that the City of New Britain is liable for his claimed injuries and damages because the City failed to supervise its officers.  "[A] government supervisor who fails to take obvious steps to prevent manifest misconduct is subject to suit under § 1983 in certain, limited circumstances." *Reynolds*, 506 F.3d at 192.  Plaintiff has produced some testimonial evidence of the supervision of officers—for example, that Walsh should have called a supervisor to the scene when substantial force was used, Pl.'s Rule 56(a)2 Stmt. ¶ 65 [Rec. Doc. 82], and that when plaintiff arrived at the police station and Walsh's supervisors saw the extent of plaintiff's injuries and heard defendant Walsh's report of the events, they initiated an investigation into the events that night. Steck Dep., Pl. Ex. 2, at 26:9–36:12 [Rec. Doc. 82]; Saccente Dep., Pl. Ex. 13 at 17:1–24:19 [Rec. Doc. 82].  However, plaintiff fails to allege any deficiencies with that supervision or lack thereof, or how any of the alleged deficiencies in supervision caused his asserted ultimate injury and damages.  Plaintiff's *Monell* claim based on a failure to supervise on the record before the Court has no basis in fact.

Plaintiff also asserts that the City of New Britain is liable under *Monell* because the City failed to adequately and properly investigate citizen complaints of police misconduct.

21

"Deliberate indifference to claims of such civil rights violations—tantamount to a custom or policy sufficient to support municipal liability under § 1983—may be inferred from a municipality's lack of appropriate response to repeated complaints of such violations." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011).  Based on the record before the Court, there is not a *soupçon* of evidence that the City of New Britain failed to properly investigate citizen complaints of police misconduct, thus there is no evidence to infer that the City of New Britain demonstrated "[d]eliberate indifference to claims of such civil rights violations—tantamount to a custom or policy sufficient to support municipal liability under § 1983." *Jackler*, 658 F.3d at 236. Plaintiff's *Monell* claim based on failure to investigate on the record before the Court has no basis in fact.

The City of New Britain's motion for summary judgment on plaintiff's *Monell* claim for failure to train, failure to supervise, and failure to investigate will be granted in its entirety.

IV. Conclusion

Jeffrey Walsh's Motion for Summary Judgment [Rec. Doc. 77] on plaintiff's federal law excessive force, unlawful entry, and false arrest claims and plaintiff's Connecticut state law assault and battery and negligent infliction of emotional distress claims will be **DENIED**; and summary judgment will be **GRANTED** on plaintiff's indemnification claims on the wanton, willful, malicious assault and battery, negligent assault and battery, false arrest, and negligent infliction of emotional distress claims against Walsh and on his *Monell* claim against the City of New Britain for failure to train, failure to supervise, and failure to investigate.

The City of New Britain's Motion for Summary Judgment [Rec. Doc. 76] will be **DENIED** as to plaintiff's state indemnification claims on the excessive force, unlawful entry, false arrest, negligent infliction of emotional distress, and assault and battery claims against the

City of New Britain and will be **GRANTED** as to plaintiff's *Monell* claim for failure to train,

failure to supervise, and failure to investigate and plaintiff's state indemnification claim based on

the *Monell* claim.

Tucker L. Melançon
United States District Judge

December 5, 2012
Bridgeport, CT