UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X
Christopher Roguz,

                     Plaintiff,

          -against-

Jeffrey Walsh and City of New Britain,

                    Defendants,
------------------------------------------------------------ X

**MEMORANDUM RULING ON THE
PARTIES' MOTIONS IN LIMINE**


Case No. 09-1052 (TLM)

 April 5, 2013

## THE DECISION OF THE COURT

      Plaintiff Christopher Roguz brought this action against defendants Jeffrey Walsh and the

City of New Britain. Plaintiff alleges claims against Walsh for false arrest, unlawful entry, and

excessive force under the Fourth Amendment and 42 U.S.C. § 1983. He additionally alleges

Connecticut state law claims against Walsh for assault and battery and negligent infliction of

emotional distress. Finally, he brings indemnification claims against the City of New Britain.[1]

      For a detailed history of the alleged facts of the June 4, 2007 incident from each party's

perspective, see the Court's memorandum ruling on summary judgment. [Rec. Doc. 135], *Roguz*

*v. Walsh*, 09-1052, 2012 WL 6049580 (D. Conn. Dec. 5, 2012).

      In anticipation of trial, plaintiff Roguz and defendant Walsh brought numerous motions

in limine to preclude certain evidence.  Plaintiff seeks to preclude evidence of: 1) plaintiff's

---

[1] In the summary judgment ruling, the Court dismissed the following of plaintiff's claims against
the City of New Britain: a *Monell* claim for failure to train, failure to supervise, and failure to
investigate and a claim for indemnification under Connecticut state law based on the *Monell*
claim. [Rec. Doc. 135]. Additionally, the following of plaintiff's claims against Walsh were
dismissed: indemnification claims on the wanton, willful, malicious assault and battery,
negligent assault and battery, false arrest, and negligent infliction of emotional distress claims
against Walsh and on the *Monell* claim against the City of New Britain for failure to train, failure
to supervise, and failure to investigate. *Id.*

interactions with emergency medical personnel after the incident with Walsh concluded [Rec. Docs. 106, 108, 109]; 2) plaintiff's criminal history [Rec. Docs. 106, 107, 110, 111, 112, 113, 114, 115]; 3) certain testimony from defendant Walsh's proposed expert witness Daniel Wick [Rec. Doc. 107]; and 4) plaintiff's arrest related to the 2007 incident [Rec. Doc. 116, 117].

Defendant Walsh seeks to preclude the following evidence: 1) Walsh's arrest and criminal prosecution [Rec. Doc. 100]; 2) plaintiff's proposed expert Dr. H. Wayne Carver's report and testimony regarding the causation of plaintiff's abdominal injury [Rec. Doc. 101]; 3) opinion evidence from New Britain Police Department employees regarding whether the force used by Walsh was unreasonable, criminal, or constituted a terminable offense [Rec. Doc. 102]; 4) evidence of the dismissal of the criminal charges against plaintiff [Rec. Doc. 103]; 5) evidence of the policies or guidelines of the City of New Britain Police Department [Rec. Doc. 104]; 6) evidence of Walsh's departure from the City of New Britain Police Department [Rec. Doc. 105]; and 7) evidence of the City of New Britain Police Department's investigation of Walsh's conduct during the 2007 incident [Rec. Doc. 118].

For the reasons that follow, the Court will grant, deny, grant in part, and deny in part the parties' motions.

## I.      Standard for Assessing Relevant Evidence in an Excessive Force Claim

Plaintiff's excessive force claim is governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989). Determining whether the force used was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotations and citations omitted). The assessment involves consideration of the facts and circumstances confronting the officer, including the

severity of the crime at issue, whether the suspect posed an immediate threat to the officers or others, and whether the suspect was resisting arrest or attempting to flee to evade arrest. *Graham*, 490 U.S. at 396. Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while considering that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

## II.        Plaintiff's Interactions with Emergency Medical Personnel

Plaintiff moved to preclude the testimony and other related evidence of Craig Nolan and Alexander Hilliard of New Britain Emergency Medical Services ("the paramedics") regarding certain aspects of their interactions with plaintiff. On June 4, 2007, Nolan and Hilliard went, as paramedics, to Torkom Drive to treat plaintiff's injuries and to take him to the hospital. Plaintiff seeks to preclude the paramedics' testimony regarding his spitting, the need to place a mask on him as a result of his behavior, and any opinion testimony regarding whether they believed he was intoxicated. [Rec. Doc. 106]. He also seeks to preclude two New Britain Police Reports that document interviews with Nolan and Hilliard and the statements that Nolan and Hilliard gave to the New Britain Police Department. [Rec. Doc. 108]. He seeks redaction of references of his abusive behavior and spitting from the New Britain EMS Report. *Id.* Finally, plaintiff moves to preclude Walsh's expert Daniel Wick from testifying about his interactions with Nolan and Hilliard. [Rec. Doc. 107]. Plaintiff argues that those aspects of the paramedics' testimony, statements, and reports would amount to impermissible character evidence under Rule 404 and would be unfairly prejudicial under Rule 403 due to the similarities between Nolan and Hilliard's allegations regarding plaintiff's actions during his treatment and transport and Walsh's

allegations regarding plaintiff's actions during the incident that took place earlier in the night and that are at the center of this litigation.

Defendant Walsh presents one argument in favor of admission of Nolan's and Hilliard's allegations regarding plaintiff's actions: Their testimony is admissible as personal observations of a lay witness. [Rec. Doc. 128]. While it is true that the paramedics' proffered testimony about their observations of plaintiff does not run afoul of Rule 701's requirement that lay testimony must be "rationally based on the witness's perception," defendant Walsh's argument does not address plaintiff's Rule 403 and 404 objections.

The City of New Britain argues that the testimony and reports of the paramedics are "relevant to understanding what the [sic] defendant Walsh was confronted with when he responded to this call for police service." [Rec. Doc. 120]. The paramedics arrived after the incident at the center of this litigation ended: Plaintiff does not allege that any excessive force occurred after the paramedics arrived at the scene. In an excessive force case, "[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *Bryant v. City of New York,* 404 F.3d 128, 136 (2d Cir. 2005) (internal citations omitted). The paramedics were not present to observe the facts and circumstances that confronted defendant Walsh. Events that occurred after the alleged use of excessive force took place, including after Walsh left plaintiff's presence, are not probative of the reasonableness of Walsh's decisions made before the paramedics arrived. *See Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("The reasonableness inquiry depends only upon the officer's knowledge of circumstances immediately prior to and at the moment he made the split-second decision to employ deadly force."). Therefore, the paramedics' observations regarding the plaintiff's spitting

and other behavior are not relevant evidence of the facts and circumstances that confronted

Walsh when he made the decision to use force.

The City asserts that the testimony and reports of the paramedics are relevant to what

defendant Walsh observed and are not evidence of specific acts used to prove character in order

to show that on a particular occasion the plaintiff acted in accordance with that character in

contravention of Rule 404(b). Rule 404(b) provides that:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in
> order to show that on a particular occasion the person acted in accordance with the
> character. This evidence may be admissible for another purpose, such as proving motive,
> opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of
> accident.

Fed. R. Evid. 404.[2]

While the City asserts that its proposed use of the evidence does not violate Rule 404(b),

the City's explanation of its proposed use is precisely as impermissible character evidence:

Evidence of Roguz's actions after the incident helps establish what defendant Walsh experienced

when he arrived, or, in other words, that Roguz's actions after the incident prove that he acted

similarly during the incident. Evidence of Roguz's behavior after the alleged excessive force

occurred is not admissible as character evidence to prove propensity to act in accordance with

that character. Because the evidence of the paramedics' allegations that plaintiff spit and was

abusive during their interactions with him has not been offered to prove anything other than the

plaintiff's bad character, Rule 404(b) bars such evidence. No reference to these aspects of the

plaintiff's behavior after the alleged excessive force occurred may be made.

---

[2] The Court notes that neither Walsh nor the City of New Britain have argued that any of the
evidence in this case could be used for any of the other purposes laid out by Rule 404(b) as
exceptions to the general prohibition against character evidence used to prove propensity.

However, the paramedics' observations of plaintiff and their belief, based on those observations, as to whether plaintiff was intoxicated are relevant to the facts and circumstances that confronted Walsh because plaintiff's intoxication at the time of the paramedics' arrival is reasonably related to his level of intoxication shortly before their arrival during his interactions with Walsh. A person who has personal knowledge from observation is competent to testify as to whether an individual is intoxicated. *See* Fed. R. Evid. 701.[3] Testimony regarding plaintiff's spitting or his "abusive" behavior may then be relevant to the paramedics' observations of his intoxication. While the paramedics' belief that plaintiff was intoxicated because they observed his spitting or abusive behavior may be relevant to something other than propensity to act in accordance with character, it is still not admissible under the Rule 403 analysis. Rule 403 allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Plaintiff's actions during his encounter with the paramedics, while having some relevance to his intoxication, are nonetheless inadmissible because the danger of unfair prejudice substantially outweighs any probative value the testimony might have in light of the nature of the positions taken by Roguz and by Walsh regarding what occurred during their earlier encounter. For the same reason, the police reports, sworn statements by Nolan and Hilliard given to the New Britain Police Department, and the New Britain EMS Prehospital Care Summary are not admissible as evidence of plaintiff's behavior during his encounter with Walsh.

## III.        Plaintiff's Criminal History

Plaintiff moved to preclude testimony regarding and evidence of his arrests and convictions arising from incidents unrelated to this litigation. [Rec. Docs. 106, 107, 110, 111, 112, 113, 114, 115]. He seeks to preclude evidence of six arrests and one nolo contendere: 1) an

---

[3] Rule 701 allows a lay witness to give testimony "rationally based on the witness's perception."

August 26, 2009 arrest for disorderly conduct and assault; 2) an August 27, 2009 arrest for disorderly conduct, criminal mischief and a nolo contendere for breach of peace; 3) an October 24, 2009 arrest for assault on police, breach of peace, assault, and failure to provide fingerprints; 4) an October 24, 2009 arrest for violation of protective order; 5) a December 19, 2010 arrest for interfering with an officer, violation of a protective order, and failure to appear; and 6) an April 10, 2012 arrest for disorderly conduct and interfering with an officer. Plaintiff argues that any reference to or evidence of these arrests and the nolo contendere should be precluded under Rules 403 and 404(b) and are inadmissible for impeachment purposes under Rules 608 and 609. Walsh objected to plaintiff's motion and framed his objection in terms of the evidence's admissibility for impeachment purposes. [Rec. Doc. 128].

Because all of the arrests and the nolo contendere occurred after the incident at the center of this litigation, they are not relevant evidence of the facts and circumstances that confronted Walsh on June 4, 2007. The arrests and the nolo contendere are additionally not admissible as other acts or wrongs to show that plaintiff has a certain predisposition that he acted consistent with during the event in question. Fed. R. Evid. 404(b).[4]

Plaintiff additionally asserts that the arrests are not admissible as impeachment evidence. Rule 609(a)(1) permits the introduction of evidence related to a witness's prior conviction if the prior crime was punishable by more than one year in prison. However, arrests are not admissible under Rule 609. "Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948). Therefore, plaintiff's arrests are not admissible as impeachment evidence.  Furthermore,

---

[4] The Court again notes that neither Walsh nor the City of New Britain argued that this evidence is admissible for any permissible use under 404(b).

plaintiff's nolo contendere was not punishable by more than one year in prison and is also inadmissible as impeachment evidence.

Walsh responds by arguing that the charges are still pending and could become felony convictions admissible to impeach plaintiff's character for truthfulness under Rules 608 and 609. Under Rule 609(a)(1),[5] the admissibility of convictions for the purpose of attacking character for truthfulness is subject to the Rule 403 balancing test. Rule 403 allows the exclusion of relevant evidence if the probative value is substantially outweighed by the danger of unfair prejudice. The Court will consider the admissibility of plaintiff's criminal record should any of his previous arrests result in felony convictions prior to the commencement of trial and upon the motion being reurged.  However, the Court notes the strong likelihood of a finding of unfair prejudice under the Rule 403 balancing test for the arrests in question, many of which were for similar conduct and offenses as the June 4, 2007 event at the center of this litigation. The Second Circuit has cautioned that where the conviction is for the same offense, "[t]he potential for prejudice . . . is greatly enhanced." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971). Accordingly, plaintiff's motions seeking preclusion of testimony regarding and evidence of his arrests and convictions arising from incidents unrelated to this litigation will be granted.

**IV.      Plaintiff's Arrest and Dismissal of the Charges Related to the 2007 Incident**

Plaintiff seeks to preclude evidence of his arrest stemming from the incident underlying this litigation [Rec. Doc. 116], and defendant Walsh seeks to preclude evidence of the dismissal of those charges [Rec. Doc. 103]. The fact that plaintiff was arrested is plainly relevant to his excessive force claim. In *Graham v. Connor*, the Supreme Court held that the reasonableness

---

[5] Walsh does not argue that any of the arrests, should they result in convictions, would be admissible to impeach character for truthfulness as crimes involving dishonesty or false statements under Rule 609(a)(2).

analysis for excessive force cases under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, *including the severity of the crime at issue*." 490 U.S. 386, 396 (1989) (emphasis added). Furthermore, the Second Circuit applied *Graham* to hold that the crime in question is relevant to evaluating the objective reasonableness of an officer's use of force. *Davis v. Rodriguez*, 364 F.3d 424, 436 (2d Cir. 2004).

Walsh moved to preclude evidence of the dismissal of the criminal charges filed against plaintiff. However, under Connecticut law, favorable termination is an element of a section 1983 false arrest claim. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (citing *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)).  The jury will be instructed in the Court's final jury instructions that the unconditional dismissal of charges is considered a favorable termination. *See Venghaus v. City of Hartford*, 3:06CV01452 DJS, 2012 WL 1050014 (D. Conn. Mar. 27, 2012) (discussing the state of the favorable termination requirement under Connecticut state law and Second Circuit precedent). The motions to preclude evidence related to plaintiff's 2007 arrest and dismissal of the charges for which he was arrested will be denied.

## V.        Expert Testimony of Dr. H. Wayne Carver

Defendant Walsh's Motion in Limine and *Daubert* motion requests the preclusion of the testimony and the October 29, 2007 report of plaintiff's proposed expert witness Dr. H. Wayne Carver, Chief Medical Examiner of the State of Connecticut, regarding the causation of the plaintiff's abdominal injury. [Rec. Doc. 101].  The City of New Britain objects to Walsh's motion [Rec. Doc. 122], as does plaintiff [Rec. Doc. 129]. Dr. Carver reviewed photographs of plaintiff's abdominal wound, photographs of the restraint and safety devices used in an ambulance, and a sample police baton to form an opinion as to whether plaintiff's "abdominal injury [was] consistent with the restraint/safety devices on the ambulance transport cart or . . .

9

with a wound from a [collapsible] police baton . . . ." [Rec. Doc. 101]. Based on the photographs, Dr. Carver analyzed the shape, location, and color of plaintiff's contusions and wounds and compared them to the ambulance's devices and a sample police baton. His review was not done in response to this litigation, but rather in connection with the New Britain Police Department's internal investigation of Walsh's conduct. Walsh does not challenge Dr. Carver's qualifications as a medical expert. Rather, Walsh argues that Dr. Carver's testimony (1) does not meet the reliability requirements of *Daubert*, (2) is not based on scientific, technical, or other specialized knowledge, and (3) will not assist the jury and gives an opinion as to an ultimate fact.

Pursuant to the Federal Rules of Evidence, expert testimony is properly admitted where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" and "the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). *Daubert* listed a series of factors that, while not a "definitive checklist or test," may be considered when determining whether proffered expert testimony "has the required indicia of scientific reliability: whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Daubert*, 509 U.S. at 593–94). The test of reliability, however, is flexible, and *Daubert*'s factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In addition to determining that a witness is qualified to

testify as an expert and that the opinion is based on reliable data and methodology, the witness's

testimony must "assist the trier of fact." Fed. R. Evid. 702; *Nimely*, 414 F.3d at 397.

Walsh argues that Dr. Carver's testimony does not meet the reliability requirements of

*Daubert* because it is not based on scientific knowledge or a valid scientific methodology.

Specifically, Walsh asserts that the comparison of photographs is not a reliable methodology and

implies that this makes Dr. Carver's opinion "mere speculation." Dr. Carver's proffered

testimony is based on scientifically-testable observations about the appearance of wounds and

contusions resulting from different causes. *See Korsko v. Pizarro*, 2010 WL 3615021 (D. Conn.

Sept. 10, 2010) (allowing medical expert to testify about the age of contusions depicted in

photographs based on his medical training and experience). Dr. Carver testified at his deposition

that contusions "tend to reflect the shape of the thing that caused them" and that cylindrical

objects commonly create a specific contusion shape and pattern. Carver Dep. [Rec. Doc. 129].

Cross-examination at trial is the appropriate means for challenging Dr. Carver's opinion.

*Daubert*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence."). Walsh will be free to subject Dr. Carver's opinion,

methodology, data, or sources to rigorous cross-examination at trial.

Walsh further argues that Dr. Carver's opinion regarding whether plaintiff's abdominal

injuries were consistent with the devices in the ambulance cart or with a cylindrical object is

inadmissible as it will not assist the jury because it "substitute[s] Dr. Carver's conclusions about

the reasonableness of Officer Walsh's action for those of the jury" and wrongly "giv[es] an

opinion as to the ultimate fact in issue." [Rec. Doc. 101]. The Second Circuit has held "that

expert testimony that usurps either the role of the trial judge in instructing the jury as to the

11

applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely*, 414 F.3d at 397 (internal quotations and citations omitted). On the other hand, an expert *may* testify as to factual conclusions, including the ultimate issue of fact in the case. *See United States v. Duncan*, 42 F.3d 97, 102–03 (2d Cir. 1994); Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").[6] Dr. Carver's proffered testimony does not involve legal conclusions regarding the objective reasonableness of the force used, but rather expresses an opinion that certain shapes, colors, and locations of wounds and contusions reflect the causation of those wounds and contusions. Walsh's argument that Dr. Carver's testimony will not aid the jury because it gives a legal conclusion as to reasonableness or because it wrongly goes to the ultimate fact in issue is without merit. Accordingly, defendant Walsh's motion to preclude Dr. Carver's testimony will be denied.

Walsh also moved to preclude Dr. Carver's report from being introduced into evidence. During his testimony, Dr. Carver may refer to his report, but may not read it to the jury, and the report will not be admitted into evidence.

## VI.        City of New Britain Police Department Policies

Walsh seeks to preclude "all evidence, testimony, and argument regarding the City of New Britain Police Department's General Orders, rules of conduct, policies, and procedures

---

[6] The Advisory Committee Notes to Rule 704 provide a helpful example of the distinction between an impermissible legal conclusion and a permissible factual conclusion, cited in *Duncan*, 42 F.3d at 103:

> Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

(collectively 'policies')" because it is irrelevant and its probative value is outweighed by its prejudicial effect. [Rec. Doc. 104]. Walsh argues that the objective reasonableness inquiry central to excessive force analysis is not capable of a precise definition, is meant to consider all facts and circumstances of the case, and cannot be confined to the framework established by the New Britain Police Department through its policies and guidelines. Walsh argues further that the Supreme Court in *Whren v. United States*, 517 U.S. 806 (1996), concluded "that because police rules, practices, and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct." [Rec. Doc. 104].

In opposition, the City of New Britain argues that the New Britain Police Department's policies are relevant to the indemnification claims against the City under Connecticut General Statute 7-465, which requires that defendant Walsh "was acting in the performance of his duties and within the scope of his employment," and that the damages were "not the result of any willful or wanton act of such employee in the discharge of such duty." [Rec. Doc. 125]. In particular, the City argues that violation of the Department's rules of conduct is relevant in determining whether Walsh acted in the performance of his duties and within the scope of his employment and/or whether his actions were willful and wanton. Plaintiff objected and argued the evidence is relevant and not unfairly prejudicial.

The Court agrees with Walsh that the City's policies are not a substitute for a constitutional standard and that violation of or compliance with the City's policies cannot replace the Fourth Amendment inquiry. While *Whren* involved the constitutionality of searches and not excessive force, 517 U.S. at 815, its analysis of the Fourth Amendment reasonableness inquiry for searches and seizures easily applies to the excessive force reasonableness inquiry as well. *See*

*Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("[W]e are confident that, if confronted with the question of whether police manuals, guidelines or general orders are 'reliable gauges' of the reasonableness of an officer's use of force, the Court would reach the same conclusion that it did in *Whren*."). The City's policies are not relevant to the excessive force claim; however, the policies do serve as guidelines for the evaluation of an officer's job performance, and accordingly are relevant in this case as to whether Walsh was acting within the scope of his employment.  Therefore, in the event that the case is not bifurcated, evidence relating to the City's policies will be admissible, but a limiting instruction will be given to instruct the jury that it may not consider the City's policies in evaluating the reasonableness of the force used by Walsh but may only consider the City's policies in determining whether or not Walsh was acting within the scope of his employment at the time of his interaction with plaintiff.

## VII.        Reasonableness of Walsh's Actions

In several of his motions in limine [Rec. Docs. 100, 102, 104, 105, 118], Walsh moved to preclude evidence for lack of "relevance" based on the theory that any testimony or evidence that explicitly or implicitly states that Walsh's use of force was improper replaces the constitutional standard and dictates the verdict to the jury.  Walsh's argument in these motions is substantially similar to his argument regarding the City's policies. Walsh argues that evidence of his arrest, criminal prosecution, and departure from employment after the 2007 incident would substitute the criminal standard or the employment standard, respectively, for the Fourth Amendment excessive force standard.  [Rec. Docs. 100, 105]. He also argues that any testimony from City of New Britain employees that Walsh's actions were unreasonable, criminal, terminable, or in violation of the City of New Britain's policies would substitute the witnesses' opinions regarding force and the standards of criminal law, employment law, and the City of New Britain's policies

for the constitutional excessive force standard.  [Rec. Doc. 102]. Similarly, he argues that the

internal investigation and its findings would substitute the investigation for the constitutional

analysis. [Rec. Doc. 118]. Because these arguments are essentially the same as far as they relate

to the constitutional standard for an excessive force claim, they will be considered together.[7]

"Witnesses may not present testimony in the form of legal conclusions." *Cameron v. City of

New York*, 598 F.3d 50, 62 (2d Cir. 2010) (quotations and citations omitted). This rule applies to

both expert and lay witnesses, *id.*, and prohibits explicit legal conclusions and any testimony that

implicitly communicates a legal standard to the jury. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir.

1992). In *Hygh*, the Second Circuit applied this rule to expert testimony about the use of force in

a section 1983 case. *Id.* The expert "was questioned extensively concerning [the officer's] use of

force," during which he tendered conclusions the Court deemed to violate the rule prohibiting

testimony regarding legal conclusions. *Id.* Specifically, the Circuit Court pointed to the expert's

"conclusory condemnations" of the officer's actions, including that his conduct "was not

'justified under the circumstances,' not 'warranted under the circumstances,' and 'totally

improper.'" *Id.* The Circuit Court found that this testimony "merely told the jury what result to

reach." *Id.* (citing the Advisory Committee Note to Rule 704). The Circuit Court compared this

inadmissible evidence with the expert's other testimony, which was "a larger body of otherwise

unobjectionable testimony concerning police procedures involving violent arrestees from which

the jury could easily have drawn the same conclusions that [the expert] did." *Id.* at 365. Any

witness called to testify at trial must testify only in accordance with *Hygh* and may not testify in

the form of legal conclusions. Such witnesses may, however, if otherwise qualified, testify to

---

[7] Other evidentiary issues related to Walsh's arrest and criminal prosecution, departure from
employment, and the internal affairs investigation are dealt with more fully in Sections IX, X,
and XI.

general police procedures. All documentary evidence sought to be introduced at trial must likewise comport with *Hygh*.

Similarly, Walsh argues that testimony regarding whether Walsh's actions were in violation of the City of New Britain policies is not relevant and would encourage the jury to use the standard of the City of New Britain police guidelines or policies in lieu of the constitutional standard. The Court agrees that the opinions of the City of New Britain employees regarding whether Walsh violated the City's policies cannot establish a constitutional violation for the reasons set out above. However, whether Walsh was in violation of the City's policies is relevant to the inquiry of whether he was acting within the scope of his employment, as required for indemnification under Connecticut General Statute 7-465. Accordingly, the employees, if otherwise qualified, may testify as to Walsh's violations of the policies. For the same reason, there can also be testimony regarding the investigation and the findings made by the investigation. In the event that the case is not bifurcated, a limiting instruction will be given to the jury instructing them that violations of the policies and guidelines of City of New Britain and the result of the Department's investigation are not to be considered as evidence that Walsh committed a constitutional violation in regards to plaintiff's excessive force claim but may be considered to ascertain whether or not Walsh was acting within the scope of his employment.

**VIII.      Expert Testimony of Daniel Wick**

Plaintiff seeks to preclude certain aspects of Walsh's proposed expert witness Daniel Wick's testimony: 1) plaintiff's spitting and other behavior in front of the paramedics; 2) reference to plaintiff's experience as a "fighter"; 3) reference to irrelevant "outside studies"; and 4) reference to an incident between police and a handcuffed individual in Florida. [Rec. Doc. 107].

Wick's proposed testimony raises serious admissibility issues.  Wick's report gives the opinion that the force used by Walsh "was objectively reasonable based on the totality of the circumstances." This, and many other statements made in the report, violates *Hygh*'s prohibition on "conclusory condemnations" of an officer's actions, including that the conduct "was not 'justified under the circumstances,' not 'warranted under the circumstances,' and 'totally improper.'" *Hygh*, 961 F.2d at 364. Additionally, the report includes extensive inadmissible legal conclusions and argumentation. *See, e.g.*, *Nimely*, 414 F.3d at 397 (finding improper "expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law"). Based on the present state of the record, the Court is also concerned with Wick's ability to be qualified as an expert under *Daubert*. Accordingly, before Wick may testify, the Court will conduct a *Daubert* hearing to evaluate Wick's qualifications and the admissibility of his purported testimony. If Wick is qualified as an expert or otherwise permitted to testify, *Wick's testimony will be subject to the restrictions set out in this ruling in all respects.*

In no event will Wick's report be admitted into evidence. His report is essentially a legal brief and contains numerous impermissible legal conclusions.

**IX.     Walsh's Arrest and Criminal Prosecution**

Walsh's motion in limine to preclude evidence of his arrest and criminal prosecution presents several issues in addition to the relevance objection addressed in Section VII. [Rec. Doc. 100]. Walsh also argues that the danger of unfair prejudice outweighs the probative value, which would prevent the admissibility of the arrest and prosecution for the purpose of proving that Walsh was not acting within the scope of his employment. The City argues that Walsh's arrest and prosecution are relevant as to whether Walsh was acting outside the scope of his employment and/or was acting willfully or wantonly, thus negating any liability on behalf of the

City to indemnify plaintiff for Walsh's conduct, but does not address the danger of unfair prejudice. [Rec. Doc. 121]. Without further explanation, plaintiff's objection argues that the testimony related to the criminal investigation may be admissible at trial as impeachment evidence or as prior inconsistent statements. [Rec. Doc. 127].

Walsh's arrest and prosecution have little probative value. While they provide some evidence of whether Walsh was acting within the scope of his employment because it was his employer who decided to pursue arrest, that decision related to the criminal case against Walsh was made by the Police Department in its capacity as a law enforcement agency rather than as his employer. Furthermore, arrests are not probative of the facts underlying the arrest. The risk of unfair prejudice, on the other hand, is high. Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The arrest has the potential to prejudice the jury's perception of the facts at issue. The jury could conclude that because Walsh was arrested for his conduct, his conduct was unreasonable. The plaintiff will have the opportunity to question Walsh as well as representatives of his employer about Walsh's conduct, and thus evidence of his arrest and criminal prosecution would be cumulative. The limited probative value of Walsh's arrest and subsequent criminal case is substantially outweighed by the danger of unfair prejudice, and evidence related to Walsh's arrest and prosecution is thus inadmissible.

Plaintiff asserts that some of the evidence from the criminal case, such as testimony, could be used as impeachment evidence or be admissible as prior inconsistent statements. The Court will rule on any impeachment evidence or prior inconsistent statements, if the need for such arises, after Walsh testifies at trial, outside of the presence of the jury, and *before* plaintiff and/or the City of New Britain attempt to introduce such evidence.

X.        The Internal Affairs Investigation of Walsh's Conduct

Walsh moved to preclude any evidence of or reference to the New Britain Police

Department's follow up investigations and the Internal Affairs investigation of his conduct

during Roguz's arrest because it is not relevant and is unfairly prejudicial.  [Rec. Doc. 118].

Walsh additionally argues that portions of the evidence contain inadmissible hearsay. Walsh

objects to testimony about the investigation from ten New Britain Police Department employees

and to over sixty of plaintiff and the City's exhibits, including signed statements, depositions,

photographs, Walsh's baton, and a memorandum from Captain Matt Tuttle summarizing the

investigation and providing his findings. Plaintiff objects to Walsh's motion and argues that the

investigation is relevant to the reasonableness of Walsh's use of force and that its probative value

outweighs the prejudicial effect. [Rec. Doc. 134]. Additionally, he argues that any prior

inconsistent statements can be used as impeachment evidence, or, if made at a hearing or in a

deposition, as substantive evidence, and therefore individual determinations regarding

admissibility of the documents must be made at the time of trial. The City of New Britain also

objects, arguing that the investigation is relevant to plaintiff's indemnification claim against the

City of New Britain. [Rec. Doc. 123]. The City further argues that the documents are admissible

as business records.

A.  Legal Conclusions of the Investigation

Walsh argues the existence of an investigation commenced by the New Britain Police

Department and its findings are not relevant because they substitute the investigation for the

constitutional inquiry of the jury and a violation of police procedure is not equivalent to a

violation of a constitutional standard. As discussed earlier, any witness called to testify at trial

must testify only in accordance with *Hygh* and may not testify in the form of legal conclusions.

However there are admissibility issues specific to conclusions given in investigative reports.  In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 178 n.13 (1988), the Supreme Court explicitly left open the question of whether legal conclusions made in public records are admissible, however the weight of the opinions from the Circuits find that they are not. *See Miranda-Ortiz v. Deming*, 94 CIV 476 CSH, 1998 WL 765161 (S.D.N.Y. Oct. 29, 1998) (compiling cases and applying principle to exclude legal conclusions in public record). Any legal conclusions made by the investigation will not be allowed into evidence nor are they to be referred to. In the event that the case is not bifurcated, a limiting instruction will be given to the jury instructing them that violations of the policies and guidelines of City of New Britain and the findings of the Department's investigation are not to be considered as evidence that Walsh committed a constitutional violation in regards to plaintiff's excessive force claim but may be considered by the jury only to ascertain whether Walsh was acting within the scope of his employment.

**B.  Reference to the Investigation and the Written Investigatory Report**

The result of the Internal Affairs investigation involves the Department's determinations, as Walsh's employer, of the propriety of his actions, which are relevant to the indemnity claim that remains against the City of New Britain.  Therefore, his employers' statements regarding Walsh's job requirements, training, and violations are highly probative. On the other hand, the findings of the investigation are highly prejudicial to Walsh to the extent that they might be used as proof that the facts are as the investigation found them to be or that Walsh's actions amounted to the violation of a constitutional standard. In the event that the case is not bifurcated, a limiting instruction will be given that the findings of the investigation may only be considered by the jury to ascertain whether Walsh was acting within the scope of his employment and not whether the force employed against plaintiff was reasonable under the circumstances.

Additionally, in the event that the case is not bifurcated, in order to limit the possible unfair prejudice, the report itself may not be "taken into the jury room where it might continue to speak." *Gentile v. County of Suffolk*, 129 F.R.D. 435, 461 (E.D.N.Y. 1990) (Weinstein, J.) *aff'd*, 926 F.2d 142 (2d Cir. 1991). Because of the danger of unfair prejudice and the extent to which the investigation tracks the facts and issues in this case as to Walsh's conduct during his interaction with plaintiff, the sixty documents related to the investigation, including the report of Captain Tuttle [Rec. Doc. 118, Ex. 18] create a situation where the "probative force of the written word might be overvalued." *Id.* Therefore, the documents will not be allowed into evidence. The chief of police and/or other knowledgeable City of New Britain supervisory employees may testify about the fact that investigation took place, the findings of the investigation, and specific conduct that would violate the City of New Britain's police policies and procedures. The City of New Britain is fully capable of asking the Chief or other appropriate police officials whether the conduct as alleged by plaintiff violated the City of New Britain's policies and procedures. The jury will be instructed on the Connecticut state law of indemnification and based on the jury's findings of the facts will determine whether or not Walsh was working within the scope of his employment, and thus whether or not the City of New Britain is obligated to indemnify Roguz for Walsh's actions upon a finding of liability in favor of Roguz and against Walsh.

### C.  Impeachment or Prior Inconsistent Statement Use

Plaintiff argues that some of the statements contained in the sixty-plus documents associated with the investigation could be admissible as either impeachment evidence or substantively as a prior inconsistent statement under Rule 801(d)(1)(A).  A declarant-witness's prior inconsistent statement is not prohibited as hearsay under that rule if was "given under

penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid.

801(d)(1)(A). The Court will rule on any impeachment evidence or prior inconsistent statements

if the need for such arises, after Walsh testifies at trial, outside of the presence of the jury, and

*before* plaintiff and/or the City of New Britain attempt to introduce such evidence.

## XI.      Walsh's Termination

Finally, Walsh moved to preclude evidence of his "separation from employment,

including arbitration proceedings, termination, and resignation" because it is irrelevant and

unfairly prejudicial. [Rec. Doc. 105]. The City of New Britain objected, arguing that this

evidence is relevant to whether Walsh acted within the scope of his employment. [Rec. Doc.

124]. Plaintiff objected, arguing that the evidence is relevant and that the testimony can be used

as impeachment evidence. [Rec. Doc. 133].

The fact that Walsh left employment at the City of New Britain Police Department as a

result of the incident underlying this case is relevant to whether he was acting within the scope of

his employment, but not as to whether he used excessive force against plaintiff.

On the other hand, the written arbitration decision will not be admitted into evidence as it

is not helpful to the jury and it makes inadmissible legal conclusions.  The danger of unfair

prejudice is high and outweighs any probative value, and it will be excluded under Rule 403.

## XII.     Conclusion

Plaintiff's motion seeking to preclude evidence of plaintiff's interactions with emergency

medical personnel after the incident with Walsh concluded will be granted. [Rec. Docs. 106, 108,

109]. Plaintiff's motion seeking to preclude evidence of plaintiff's criminal history will be

granted. [Rec. Docs. 106, 107, 110, 111, 112, 113, 114, 115]. The Court defers ruling on

plaintiff's motion seeking to preclude evidence of certain testimony from defendant Walsh's

proposed expert witness, Daniel Wick, pending the Court conducting a *Daubert* hearing [Rec. Doc. 107]. Plaintiff's motion seeking to preclude evidence of plaintiff's arrest related to the 2007 incident will be denied. [Rec. Doc. 116, 117].

Walsh's motion seeking to preclude evidence of Walsh's arrest and criminal prosecution will be granted. [Rec. Doc. 100]. Walsh's motion seeking to preclude Dr. H. Wayne Carver's expert report and testimony regarding the causation of plaintiff's abdominal injury will be granted in part and denied in part. [Rec. Doc. 101]. Dr. Carver will be permitted to testify regarding the causation of plaintiff's abdominal injury, but his report will not be admitted into evidence. Walsh's motion seeking to preclude opinion evidence from New Britain Police Department employees regarding whether the force used by Walsh was unreasonable, criminal, or constituted a terminable offense will be granted in part and denied in part. [Rec. Doc. 102]. Any testimony from New Britain Police Department employees must comport with *Hygh* and may not be in the form of explicit or implicit legal conclusions. Additionally, upon proper limiting instruction, any testimony that Walsh violated the Department's policies will be admissible as to whether Walsh was acting within the scope of his employment, but will not be admissible as to plaintiff's excessive force claim. Such witnesses may, however, if otherwise qualified, testify to general police procedures. Walsh's motion seeking to preclude evidence of the dismissal of the 2007 criminal charges against plaintiff will be denied. [Rec. Doc. 103]. Walsh's motion seeking to preclude evidence of the policies or guidelines of the City of New Britain Police Department will be granted in part and denied in part. [Rec. Doc. 104]. The policies will be admissible as to whether Walsh was acting within the scope of his employment, but will not be admissible as to plaintiff's excessive force claim. Walsh's motion seeking to preclude evidence of Walsh's termination from the City of New Britain Police Department will be granted in part and denied in

part. [Rec. Doc. 105]. Walsh's departure from employment will be admissible as to whether Walsh was acting within the scope of his employment, but will not be admissible as to plaintiff's excessive force claim. The written arbitration decision will not be admitted into evidence. Walsh's motion seeking to preclude evidence of the City of New Britain Police Department's investigation of Walsh's conduct during the 2007 incident will be granted in part and denied in part. [Rec. Doc. 118]. The findings of the investigation will be admissible as to whether Walsh was acting within the scope of his employment, but will not be admissible as to plaintiff's excessive force claim.